UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
ESTEBAN MACUIL,

       Petitioner,    REPORT & RECOMMENDATION
-against-          10-CV-3094 (DLI)(LB)

DAVID ROCK, Superintendent,
Upstate Correctional Facility,

       Respondent.
------------------------------------------------------X
BLOOM, United States Magistrate Judge:

  Esteban Macuil, files this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254, challenging a 2006 Kings County conviction. The Honorable Dora L. Irizarry, United States District Court Judge, referred this petition to me for a Report and Recommendation in accordance with 28 U.S.C. §636(b). For the reasons set forth below, it is respectfully recommended that the petition should be denied.

## BACKGROUND

  Petitioner and Reina Modesto ("Modesto") worked together in a restaurant owned by petitioner's brother. (Tr. at 216.)[1] Modesto's former boyfriend, Adolfo Perez ("Perez"), often visited the restaurant and caused problems. In one incident, Perez struck Modesto. (Id. at 218.) In another incident, Perez refused to pay his bill and threatened to come back with his "crew" and break the windows of the restaurant. (Id. at 220.) Once, after petitioner told Perez to leave the restaurant, Perez took out a knife, came very close to petitioner, and threatened to kill him. (Id. at 219-220.) Both Modesto and petitioner obtained restraining orders against Perez. (Id. at

---

[1] "Tr." refers to the transcript of petitioner's jury trial in Supreme Court, Kings County, October 18, 2005 – November 3, 2005. (ECF Nos. 4-5.)

1

218.) According to Modesto, she and Perez, who also had a history of threatening to kill Modesto's son, "weren't going out anymore, but [Perez] never accepted it." (Id. at 199, 230.)

On December 15, 2004, Perez called Modesto and told her to come over to his house, warning her that if she refused, he would kill her son. (Id. at 202.) Petitioner called Modesto that same day and upon hearing that Modesto planned to go to Perez's house, told her not to worry and that the "case [apparently involving the order of protection] was going good and it wouldn't be long" before it was "finished." (Id. at 202-3; 225.) When Modesto arrived at Perez's house, she received a telephone call from her son and Modesto decided to return home. (Id. at 205.) Perez accompanied Modesto to the bus stop, but then refused to let her board the bus, taking away her cell phone, saying that he didn't want to hurt her, telling her to return home with him, and calling her a taxi. (Id. at 239, 249-50.) While the two were walking from the bus stop to Perez's home, petitioner approached them from behind, pushed Modesto away, and shot Perez in the back and then again in the neck while Perez lay on the ground. (Id. at 206, 250.) Modesto testified that at the time petitioner approached, she and Perez "were just walking" hand in hand together. (Id. at 250.)

Modesto immediately placed several calls to 911. (Id. at 281.) Officers Avril and Roventini responded and found Perez lying face-down on the sidewalk when they arrived at the scene. (Id. at 70-71.) Attempts to resuscitate Perez failed. (Id. at 71-72.) Minutes later, Detective Mittiga arrived at the scene. (Id. at 38.) Following a discussion with Modesto, Detective Mittiga called petitioner in for questioning. (Id. at 41.) Petitioner first claimed that he had never left his house that night, but after continued questioning by Detective Mittiga, petitioner changed his account of the evening. (Id. at 47-48.) Petitioner stated that he had called Modesto earlier in the evening to talk about the restraining order against Perez, and Modesto

informed him that she was being followed. (Id. at 51.) Petitioner then went to protect Modesto, saw that she was arguing with Perez, and intervened. (Id. at 51.) Perez pulled out a gun, petitioner struggled for the gun, and the gun accidentally discharged twice, resulting in Perez's death. (Id. at 51.) Petitioner agreed to provide a videotaped and written statement after which Detective Mittiga arrested petitioner. (Id. at 53-54.)

At trial, the prosecution called Detective Mittiga, the officer who interrogated petitioner; Officer Avril, the first officer at the scene of the crime; John Giannotti, from the Kings County District Attorney's Office, who took petitioner's videotaped statement; Irma and Rosalina Perez, sisters of the victim; Dr. Roman, a forensic pathology expert; Detective Valenti, a firearm's analyst; and Modesto. The defense called no witnesses, however during Detective Mittiga's testimony, the jurors heard petitioner's version of the events leading to the homicide through statements he gave to Detective Mittiga. (Id.)

Modesto testified about her relationship with Perez. (Id. 197-98.) Modesto stated that Perez had struck her one time in the past. (Id. at 201.) Modesto stated that while Perez had threatened her and had refused to allow her to board the bus, Perez was not physically abusing her immediately prior to the shooting. (Id. at 202, 206.) Modesto testified that petitioner came from behind, pushed her away, and then shot Perez twice. (Id. at 206.)

Petitioner's written statement, which was admitted into evidence, reads:

> 15th of December 6 p.m., I spoke with Reina to tell her that the detective did not work today, and that the order of protection for me was going to come in one week. And she told me that she will pick hers up herself. And then she told me that someone was following her. And she told me that it was outside. She told me that they were on Cortelyou. I went over there, and I found him there. I saw she was arguing. I ran and got in between them. The guy took out a weapon that I did not see how it was. We struggled, and the gun went off. And I ran from there with great fear along Ocean Parkway to Avenue U. I don't know anything about the gun. I met a friend and he took me to my home, Sergio, the same friend

3

that took me over there. The name of the man that was arguing with Reina and the one that was shot by me twice during the fight is Adolfo.

(Id. at 51.)

Dr. Roman, who conducted the autopsy on Perez, testified regarding Perez's height, weight, and body type. (Id. at 118.) Dr. Roman also testified that Perez's death was a homicide. (Id. at 141.) She testified that Perez's wounds were inconsistent with his facing the person who discharged the gun. (Id. at 151.) Rather, the wounds were consistent with Perez being shot from behind and then shot again by someone standing over him. (Id. at 152.) Dr. Roman testified that it was "highly unlikely" that the victim shot himself. (Id. at 150.)

Detective Valenti, the firearms analyst, testified that in order for a gun to discharge, a trigger must generally be pulled. (Id. at 182.) Detective Valenti stated that out of the thousands of guns he had tested, less than ten discharge accidentally. (Id. at 187.) Defense counsel attempted to ask Detective Valenti if a gun could accidentally go off during a struggle, but didn't pursue this inquiry. (Id. at 188-190.)

During summation, defense counsel questioned Modesto's "claim[]" that she never saw a gun. (Id. at 290-91.) The prosecution's summation heavily relied on the medical testimony and the firearm analyst's expert testimony. (Id. at 301.) The prosecutor also stated that the defense had given the jury "a story, a version that he hopes is going to work, that he hopes you all are going to swallow hook, line, and sinker, and say, yeah, it was an accident." (Id.)

The jury convicted petitioner of second degree murder on November 3, 2005. (Id. at 403.) The court found petitioner's lack of prior arrests a mitigating factor and imposed a reduced sentence of twenty-two years to life in prison, down from the maximum available sentence of twenty-five years to life. (S. at 11.)[2]

---

[2] "S." refers to the transcript from the sentencing proceedings on January 12, 2006. (ECF No. 5-4.)

4

Procedural History

On February 6, 2009 petitioner appealed his conviction to the New York State Supreme Court, Appellate Division, Second Department. On appeal, petitioner argued that he was deprived of a right to a fair trial by a) the medical examiner's expert testimony that unfairly impinged on his justification defense; b) the court's curtailing of defense counsel's cross-examination of the ballistics expert; c) the prosecutor's misconduct on summation which accused the defense of concocting a story and misrepresented and distorted the evidence; and d) that his sentence was excessive given the circumstances of the crime and his unblemished record and employment history. (ECF No. 4, Aff. Of Julie Oziemblewski In Opp'n ("Opp'n") at Ex. 1, p. 3-4.)

The Appellate Division unanimously affirmed petitioner's judgment of conviction on November 24, 2009. People v. Macuil, 67 A.D.3d 1025, 888 N.Y.S.2d 764 (2d Dep't 2009). The Appellate Division found that petitioner's due process claim regarding the forensic pathology expert's testimony was unpreserved for appellate review and in the alternative, was without merit. Id. The Appellate Division also found that petitioner's claim regarding the firearms expert's testimony was unpreserved for appellate review and in the alternative, was without merit. Id. Likewise, petitioner's claim regarding the prosecution's summation was unpreserved for review and in the alternative, was without merit. Id. Finally, the Appellate Division ruled that the sentence imposed was not excessive. Id.

Petitioner's application for leave to appeal to the New York Court of Appeals was denied on March 30, 2010. People v. Macuil, 14 N.Y.3d 899 (N.Y. 2010).

Petitioner timely filed the instant habeas petition on June 29, 2010, raising the four grounds raised in his direct appeal. (Pet. at 5.)³

## DISCUSSION

I. Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the AEDPA, the reviewing court may only grant a habeas petition if petitioner's claim "was adjudicated on the merits in State court proceedings" and the state court proceeding:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). An "'adjudication on the merits' is one that (1) disposes of the claim on the merits, *and* (2) reduces its disposition to judgment." Bell v. Miller, 500 F.3d 149, 155 (2d Cir. 2007) (quoting Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir.2001)). "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011).

The Supreme Court has held that a state court decision is "contrary to" clearly established federal law as determined by the Supreme Court "if the state court arrives at a conclusion

---
³ "Pet." refers to the Petition Under 28 U.S.C. § 2254 For Writ of Habeas Corpus By A Person In State Custody. (ECF No. 1.)

opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). A decision is an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. The Court cautioned that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Id. at 410 (emphasis in original). Thus, a federal habeas court may only "issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." Harrington v. Richter, -- U.S. --, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011).

When reviewing a habeas petition, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241; see also Wainwright v. Goode, 464 U.S. 78, 83 (1983) ("[F]ederal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension."); Rose v. Hodges, 423 U.S. 19, 21 (1975) (per curiam). "Federal habeas corpus relief does not lie for errors of state law." Estelle v. McGuire, 502 U.S. 62, 67 (1991) (citations omitted). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Id. at 67-68; see also Ponnapula v. Spitzer, 297 F.3d 172, 182 (2d Cir. 2002) ("It is well established that a federal habeas court does not sit to correct a misapplication of state law, unless such misapplication violates the Constitution, laws, or treaties of the United States.").

II. Exhaustion and Procedural Bar

A federal court may not grant a writ of habeas corpus unless a petitioner has exhausted the remedies available in the state courts. 28 U.S.C. § 2254(b)(1)(A). A petitioner exhausts

State-court remedies by fairly presenting each federal claim for relief to the highest state court capable of review. Baldwin v. Reese, 541 U.S. 27, 29 (2004); Pickard v. Connor, 404 U.S. 270, 275-76 (1971) ("[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied."); Jackson v. Edwards, 404 F.3d 612, 618 (2d Cir. 2005); Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 808-09 (2d Cir. 2000). "The purpose of the exhaustion requirement is to ensure that a state court is given the 'opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" Jackson, 404 F.3d at 618 (quoting Pickard, 404 U.S. at 275). Consistent with this principle, "a state prisoner [must] present the state courts with the same claim he urges upon the federal courts." Pickard, 404 U.S. at 276.

If a state prisoner fails to exhaust a ground and that claim can no longer be raised, that claim is procedurally barred from habeas review. Federal courts have no authority to review state court decisions that rest upon an adequate and independent state procedural rule. Coleman v. Thompson, 501 U.S. 722, 729-30 (1991). The "independent and adequate state ground" doctrine is based on principles of comity and federalism, and is designed to ensure "that the States' interest in correcting their own mistakes is respected in all federal habeas cases." id. at 729-32. "This rule applies whether the state law ground is substantive or procedural," Id. at 729; however, federal review is not foreclosed unless the state court "clearly and expressly" states that its judgment rests on a state procedural bar. Harris v. Reed, 489 U.S. 255, 263 (1989). "[A] federal claimant's procedural default precludes habeas review . . . only if the last state court rendering a judgment in the case rests its judgment on the procedural default." Id. at 262. Even where the state court has ruled on the merits of a federal claim "in the alternative," federal habeas review is foreclosed where the state court has also expressly relied on the petitioner's procedural default as an independent and adequate state ground. Green v. Travis, 414 F.3d 288,

294 (2d Cir. 2005); Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990). In order to obtain federal habeas review of a procedurally defaulted claim, petitioner must either show "cause" for the default and "actual prejudice as a result of the alleged violation," "demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice," Coleman, 501 U.S. at 750, or show that he is "actually innocent." Bousley v. United States, 523 U.S. 614, 622 (1998).

   III.   Petitioner's Grounds

      A. Procedural Default

The Appellate Division held that petitioner's claims regarding prosecutorial misconduct, the scope of the forensic pathologist's testimony, and the limitation of his counsel's cross-examination of the ballistic expert were not preserved for appellate review, citing New York's contemporaneous objection rule, N.Y. Criminal Procedure Law § 470.05(2) and cases grounded therein. Macuil, 67 A.D.3d at 1025. It is well-settled that this procedural rule is an independent and adequate state law ground that bars habeas review. Whitley v. Ercole, 642 F.3d 278, 286 (2d Cir. 2011).[4] Petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Mobley v. Senkowski, No. 01-CV-6301 (JBW), 2003 WL 22952846, at *2 (E.D.N.Y. Nov. 12, 2002) (quoting Coleman, 501 U.S. at 750).[5] Here, petitioner does not demonstrate cause and prejudice, nor does he demonstrate that failure to consider these grounds will result in a fundamental miscarriage of justice. Therefore, these

---

[4] This rule requires "at the very least, that any matter which a party wishes to preserve for appellate review be brought to the attention of the trial court at a time and in a way that gave [it] the opportunity to remedy the problem and thereby avert reversible error." Id. Petitioner's counsel only generally objected to the prosecution's questioning of Dr. Roman. (Tr. at 152.) He did not object when Dr. Roman testified as to the likelihood that the injuries were self-inflicted. (Id. at 150-151.) He also did not raise any objection regarding judicial interference during his cross-examination of Detective Valenti. (Id. at 189-90.) Similarly, counsel did not object to the prosecutor's allegedly improper comment on summation. (Id. at 301.)

[5] The Clerk of Court is directed to send petitioner copies of the attached unreported decisions cited herein.

claims are procedurally barred from habeas review. In the alternative, even if these claims were not procedurally barred, they should be denied for the reasons set forth below.

B. Expert Testimony

Petitioner claims that he was denied a fair trial because the forensic pathologist improperly opined on matters related to kinesiology and body types. Dr. Roman testified that the wounds could not have been sustained in the locations where they were if Perez, who was "a man with short arms and a fairly wide torso," was holding the gun because he would not have been able to reach around and accidentally shoot himself in the back. (Tr. 151; Pet. at 9; ECF. No. 6, Traverse at 5.) Petitioner argues this testimony was misleading because Roman admitted that she did not know positions of the two individuals during the gun shots, and her testimony did not take into account the possibility that the gun was fired by petitioner during a struggle with Perez. (Id.; Opp'n at Ex. B at p. 23.)

"Under New York law, expert testimony is admissible if the trial court exercises its discretion and concludes that such testimony would clarify a technical or professional issue beyond the ken of the average juror." Neil v. Walsh, No. 07 Civ. 6685 (DLC), 2009 WL 382637, at *17 (S.D.N.Y. Feb. 17, 2009) (citation omitted). Similarly, "the qualification of a witness as an expert is a matter committed to the discretion of trial judge." Id. Petitioner's challenge to the admission of Roman's testimony is "essentially [a] matter[] of state evidence law and not cognizable on habeas review unless any error rendered the trial fundamentally unfair." Narrod v. Napoli, 763 F. Supp. 2d 359, 382-383 (W.D.N.Y. 2011). This standard is extremely difficult to meet: "[t]he introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice.'" Dunnigan v. Keane, 137 F.3d 117, 125

(2d Cir. 1998) (quoting Dowling .v United States, 493 U.S. 342, 252 (1990)), abrogated on other grounds by Perry v. New Hampshire, -- S.Ct. --, 2012 WL 75048 (Jan. 11, 2012).

In this case, Dr. Roman conducted the autopsy on Perez and thus had personal knowledge of the location and nature of the bullet wounds and Perez's height, weight, and general body type. (Tr. at 118.) This knowledge allowed Dr. Roman to opine that the bullet wounds could not have been self-inflicted. (Id. at 141.) Trial courts routinely admit testimony from forensic pathology experts on bullet trajectories and cause of death – both of which are beyond the ken of laypeople. See e.g. People v. Smith, 59 N.Y.2d 156, 168, 464 N.Y.S.2d 399, 405 (1983) ("the nature of [an] attack" is a "subject well within [a pathologist's] area of competence"); People v. Roasdo, 244 A.D.2d 772, 775, 666 N.Y.S.2d 227, 230 (3d Dep't 1997) (testimony of forensic pathologist "based on the forensic medical evidence and the entrance wound's location in the back of the head" contradicted defense that gun went off accidentally during an argument).

Even if this evidence were improperly admitted, it did not rise to a due process violation. Petitioner stated that he saw Perez arguing with Modesto, he got in between them, Perez took out a gun, the two men fought, and petitioner accidentally shot Perez.[6] Dr. Roman's testimony did not contradict this account and she admitted that Perez's abrasions could have resulted from a struggle. (Tr 154.) Thus, the trial court's admission of Dr. Roman's testimony did not render the trial fundamentally unfair. See Reyes v. Artuz, No. 99-CV-801 (FB), 2000 WL 1804706, at *3 (E.D.N.Y. Dec. 5, 2000) (no due process violation where vascular surgery expert testified as to the bullet's trajectory and resultant internal damage where petitioner had ample opportunity to inquire into the factual basis of the testimony and test the expert's credibility). As the state

---

[6] Petitioner's written statement reads: "We struggled, and the gun went off ... . The name of the man that was arguing with [Modesto] and the one that was shot by me twice during the fight is Adolfo." (Tr. at 51.)

court's decision admitting this testimony into evidence was not contrary to or an unreasonable application of clearly established Federal law, petitioner's claim should be denied.

### C. The Cross-Examination of the Ballistics Expert

Petitioner's claim that the court denied him a fair trial by limiting his counsel's cross-examination of the ballistics expert should be denied. The Confrontation Clause of the Sixth Amendment provides that 'in all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him ... .'" Cotto v. Herbert, 331 F.3d 217, 229 (2003) (quoting U.S. Const. amend. VI). "The primary purpose of this guarantee is to secure for the defendant the opportunity of cross-examination." Id. (citing Davis v. Alaska, 415 U.S. 308, 315-16 (1974)). However, the right is "not absolute," id. at 248; "trial judges retain wide latitude to impose reasonable limits on such cross-examination based on concerns about, among other things harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Howard v. Walker, 406 F.3d 114, 129 (2d Cir. 2005) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986)).

"[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Rolle v. West, No. 05-CV-591 (NGG), 2008 WL 3887662, at * 14 (E.D.N.Y. Aug. 21, 2008) (quoting Delaware, 475 U.S. at 20)(emphasis in original)). Thus, "even if a trial court erred in limiting cross-examination, the error rises to the level of a constitutional deprivation only if it had substantial and injurious effect or influence in determining the jury's verdict." Id. (internal quotation marks and citations omitted).

In this case, there was no error in the trial court's rulings during defense counsel's cross-examination of Detective Valenti. Counsel for petitioner completed his cross-examination of

12

Detective Valenti without objection or limitation from the court, establishing that in some cases, firearms accidentally discharge and that since the gun was never recovered, there was no way to tell its age, a factor which may increase the likelihood of accidental discharge. (Tr. at 185-186.) After re-direct, petitioner's counselor asked the expert a few more questions without objection or limitation from the court. Then counsel asked, "And it could be pulled by one person or it could be pulled while (sic) during a struggle, would that be correct?" The trial court was well within its discretion to sustain the prosecution's objection to this compound and confusing question. (Id. at 189.) The court allowed counsel to try to rephrase the question, but after two equally confusing attempts,[7] defense counsel stated he had no further questions. (Id. at 189-190.) The court's decision to require petitioner's counsel to rephrase the compound and confusing question did not deprive petitioner of his opportunity to cross-examine the witness. The court's instruction was neither erroneous nor a violation of petitioner's Confrontation Clause rights. Accordingly, the state court's decision was not contrary to or an unreasonable application of Federal law and the claim should be denied.

### D. Prosecutorial Misconduct

Petitioner's claim that he was denied a fair trial based on the prosecutor's summation should be denied. To establish a prosecutorial misconduct claim sufficient for habeas relief, "it is not enough that the [prosecutor's] remarks were undesirable or even universally condemned." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal quotation and citation omitted). Instead, "[t]he relevant question is whether the [prosecutor's] comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." Id. (internal quotation

---

[7] Defense counsel's subsequent attempts were also compound or confusing questions. He asked, "In your experience with testing older weapons or older revolvers, older double-action revolvers, if I may, would it be pulled during a struggle by either person struggling?" and "Would it be your opinion that when two people are struggling over one gun, and one person is holding the gun, that the trigger can be pulled?" (Tr. at 189-190.)

13

marks and citation omitted). To determine whether the prosecutor's comments rise to the level of a violation of petitioner's right to due process, the Court considers: (1) the severity of the misconduct; (2) the nature of the curative measures taken to remedy the misconduct; and (3) the certainty of the conviction absent the improper statements. Tankleff v. Senkowski, 135 F.3d 235, 252 (2d Cir. 1998) (citation omitted). The Court must examine the alleged misconduct "in the context of the entire trial." Miranda v. Bennet, 322 F.3d 171, 180 (2d Cir. 2003) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 639 (1974)).

Where defense counsel "call[s] into question the integrity and believability" of prosecution witnesses, the "prosecutor may rebut" this argument with a fair response. Robinson v. Graham, 671 F.Supp. 2d 338, 362 (N.D.N.Y. 2009). See generally United States v. Young, 470 U.S. 1, 12 (1985) (the "court must not only weigh the impact of the prosecutor's remarks, but must also take into account defense counsel's opening salvo"); United States v. LaMorte, 950 F.2d 80, 83 (2d Cir. 1991) (improper statement made in "direct response to [defense counsel's] suggestion" that cooperating witnesses lied in exchange for reduced sentences was "*de minimis* in the context of this case" and did not deprive petitioner of a fair trial). Defense counsel called one aspect of Modesto's testimony into question, stating that it was "almost impossible" that she did not see the gun. (Tr. at 290-91.) Defense counsel referred to Modesto's "claims" to characterize her testimony in a derogatory manner. (Id. at 291.) The prosecution then used the term "story" to characterize petitioner's version of events. (Id. at 301.)

This single comment was not egregious and "the standard instructions given by the trial court were probably sufficient to cure any harm that the prosecutor's misstatements may have caused." Tankleff, 135 F.3d at 253; see Tr. 284, 331-336.[8] Additionally, in light of the forensic

---

[8] Petitioner's appellate brief, ECF No. 5, Ex. B at 27, and his reply, Traverse at 11, cite additional comments as improper, including a statement that defense was searching for "any kind of theory" as to how the shooting occurred

medical evidence and Modesto's testimony that supported the account that Perez was shot from behind and then again while lying down, the Court cannot "say that this is a case in which evidence was so closely balanced that the prosecutor's comments were likely to have had a substantial effect on the jury." Id. Therefore, even if this Court were to reach the merits, petitioner's claim regarding prosecutorial misconduct should be denied as the state court's decision was not contrary to or an unreasonable application of clearly established Federal law.

E. Harsh and Excessive Sentence

Petitioner's claim that the sentence imposed was harsh and excessive given the circumstances of the crime and his unblemished record and employment history should be denied.

Federal courts may only consider sentencing when there is a violation of federal law. Wilson v. Corcoran, 131 S.Ct. 13, 16 (2010). "No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) (citation omitted). The maximum prison term for murder in the second degree, which is a class A-1 felony, is 25 years to life. See N.Y. Penal Law §§ 125.25, 70.00(1), 3(a)(i). Petitioner received a sentence of 22 years. (S. at 11.) As petitioner's sentence is within the range specified by the applicable state statute, there is no basis for habeas corpus relief. Additionally, even if the state court failed to weigh the alleged mitigating factors, "the Supreme Court has held that a 'required mitigation' claim has no support other than in death penalty jurisprudence." Salcedo v. Artuz, 107 F. Supp. 2d 405, 415 (S.D.N.Y. 2000) (citing Harmelin v. Michigan, 501 U.S. 957, 995 (1991)). The state court decision here was not

---

and exaggerated Perez's abusive nature. These claims were not raised in the petition and are not properly raised on petitioner's traverse. Nonetheless, for the same reasons stated above, these comments were not so egregious in the context of the entire trial that they denied petitioner due process.

contrary to or an unreasonable application of clearly established Federal law. Therefore, petitioner's claim should be denied.

## CONCLUSION

Accordingly, it is respectfully recommended that the instant petition for a writ of habeas corpus under 28 U.S.C. §2254 should be denied. Because petitioner has not made a substantial showing of the denial of any constitutional right, it is recommended that no certificate of appealability should be issued. 28 U.S.C. § 2253; see Lozada v. U.S., 107 F.3d 1011, 1017 (2d Cir. 1997), abrogated on other grounds, U.S. v. Perez, 129 F.3d 255, 259-60 (2d Cir. 1997) (discussing the standard for issuing a certificate for appealability); see also Lucidore v. N.Y. State Div. of Parole, 209 F.3d 107, 112-13 (2d Cir. 2000), cert. denied, 531 U.S. 873 (2000). It is further recommended that the Court should certify pursuant to 28 U.S.C. § 1915(a) that any appeal from a judgment denying this petition would not be taken in good faith. Coppedge v. U.S., 369 U.S. 438 (1962).

**FILING OBJECTIONS TO THE REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. See Fed. R. Civ. P. 6. Any request for an extension of time in which to file objections must be made within the fourteen-day period. Failure to timely file an objection to the Report and Recommendation generally waives any further judicial review. DeLeon v. Strack, 234 F.3d 84, 86 (2d Cir. 2000); Spence v. Superintendent, Great Meadow Corr. Fac., 219 F.3d 162, 174 (2d Cir. 2000); see also Thomas v. Arn, 474 U.S. 140 (1985).

    SO ORDERED.

/Signed by Judge Lois Bloom/
LOIS BLOOM
United States Magistrate Judge

Dated: February 15, 2012
       Brooklyn, New York